IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| JEROME ANDERSON, | ) Civil Action No. 3:10-2481-CMC-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| LT. GARY L. DAVIES, SGT. JANE DOE, | ) |
| CPL/OFC JOHN DOE, SHERIFF BRUCE | ) |
| BRYANT, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

This action was filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983 ("§ 1983").[1]

Plaintiff alleges violations of his constitutional rights by the named Defendants when he was housed

at the York County Detention Center ("YCDC") as a pretrial detainee. Defendants, Lt. Gary L.

Davies ("Davies"), Sgt. Jane Doe, and Cpl./Ofc. John Doe are employed by the Sheriff of York

County and work at the YCDC. Defendant Bruce Bryant ("Bryant"), is the Sheriff of York County.

On June 15, 2011, Defendants filed a motion for summary judgment. As the Plaintiff is proceeding

pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on June

16, 2011, advising Plaintiff of the importance of a motion for summary judgment and of the need for

him to file an adequate response. Plaintiff was specifically advised that if he failed to respond

adequately, Defendants' motion may be granted, thereby ending his case. Plaintiff filed his response

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2)(d) and (e) DSC.
Because this is a dispositive motion, the report and recommendation is entered for review by the
court.

to the motion for summary judgment on July 7, 2011.  In response, Defendants submitted an affidavit from YCDC detention officer Crystal Blauser ("Blauser"), an employee of the Sheriff of York County.

## STANDARD OF REVIEW

Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978), and a court is charged with liberally construing a complaint filed by a pro se litigant to allow for the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9  (1980). The requirement of liberal construction, however, does not mean the court can ignore a clear failure to allege facts which set forth a claim currently cognizable in a federal district court.  Weller v. Dep't. of Soc. Servs., 901 F.2d 387 (4th Cir.1990).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact."  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."  Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

**BACKGROUND**

Plaintiff alleges that following his arrest for armed robbery on August 30, 2008, he was booked into the YCDC. Complaint, p. 3. After being placed in a holding cell for a period of time, Plaintiff alleges that five or six corrections officer ordered him out and proceeded to attack him and used a "tazor" on him. Id. Plaintiff further alleges that he fell to the ground in severe pain, he was "punched and kicked" in the torso and back, and he was dragged to an empty holding cell. Complaint, pp. 3-4. Plaintiff alleges that he was kept in the isolation cell "naked for periods of time. Eating and drinking out of the camode." Complaint, p. 4. Plaintiff states he was transported to Just Care in Columbia for psychiatric treatment, where he stayed for eight weeks before being transported back to the YCDC. Id. Plaintiff alleges he was then placed in a "specifically 'modified' room in the medical wing" for three months with "no outside contact and no recreation." Id., pp. 4-5. Plaintiff alleges he was again sent to Just Care[2] for an additional sixty days for evaluation before being returned to the YCDC. Id., p. 5.

Plaintiff appears to allege that, prior to bringing this action, he was informed by the YCDC that they had no record of his being at the detention center during 2008. Thus, Plaintiff alleges a "cover up" and that Defendant Bryant is involved in the "cover up." Id., p. 5. Plaintiff also claims excessive force against Defendants Davies, Jane Doe, and John Doe (who all allegedly participated in the assault). Plaintiff seeks monetary damages. Id..[3]

---

[2]"Just Care" appears to be another name for the Columbia Regional Care Center.

[3]Plaintiff presents somewhat differing facts in his affidavit (attachment to opposition memorandum and Ex. 1 to Defendants' motion for summary judgment) and opposition memorandum than he presents in his complaint. Plaintiff asserts that certain other detainees witnessed the alleged use of force, but he has not submitted affidavits or deposition testimony from these witnesses.

Plaintiff later entered an <u>Alford</u>[4] plea of guilty but mentally ill as to the charge of attempted strong arm robbery and began serving his sentence within the South Carolina Department of Corrections. <u>See</u> Defendant's Ex. B (Sentence Sheet, General Sessions Tracking Sheet)  He also entered an <u>Alford</u> plea of guilty but mentally ill to the charge of assault upon an employee of a correctional facility.[5] <u>See</u> Self Aff. , Ex. 5-A (Arrest Warrant); Ex. 7 (Sentence Sheet, General Sessions Tracking Sheet).

## DISCUSSION

Plaintiff appears to allege, pursuant to § 1983, that Defendants violated his constitutional rights by subjecting him to excessive force, conspired to cover up that he was at the YCDC, and subjected him to unconstitutional conditions of confinement. He also appears to allege a claim under South Carolina law for assault and battery. Defendants contend that they are entitled to summary judgment because: (1) they are entitled to Eleventh Amendment immunity; (2) they are entitled to qualified immunity as to Plaintiff's excessive force claims; (3) Plaintiff fails to show that he was subjected to unconstitutional conditions of confinement; and (4) any state law claims are barred by the applicable statute of limitations under the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. §§ 15-78-10 <u>et seq.</u> Defendants submitted affidavits from YCDC detention center officers and Sheriff Bryant, as well as incident reports and other records.

---

[4]An <u>Alford</u> plea is an arrangement in which a defendant maintains his innocence but pleads guilty for reasons of self-interest. <u>See</u> <u>North Carolina v. Alford</u>, 400 U.S. 25, 37 (1970).

[5]This assault occurred at the end of the incidents alleged above. After being handcuffed, Plaintiff spit blood in the face of YCDC officer Richard Self ("Self"). <u>See</u> Self Aff.

1.      Qualified Immunity

Defendants contend that they are entitled to qualified immunity. Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The analysis of the defense of qualified immunity is generally examined using a two-step analysis. See Saucier v. Katz, 533 U.S. 194, 201 (2001).[6] The first step is to determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendants' conduct violated a constitutional right. Id. at 201. If the facts, so viewed, do not establish a violation of a constitutional right, the plaintiff cannot prevail, and "there is no necessity for further inquiries concerning qualified immunity." Id. If, however, a favorable view of the facts does establish such a violation, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. Id. If the right was not clearly established, the defendants are entitled to qualified immunity. Id. Here, Defendants are entitled to qualified immunity as Plaintiff fails to show that Defendants' conduct violated any of his constitutional rights.

a.      Excessive Force

Plaintiff appears to allege that he was subjected to excessive force in August, 2008 because Defendants used a taser on him, punched and kicked him, and placed a knee in his

---

[6]The Supreme Court has clarified that these steps do not need to be taken in the sequence set forth in Saucier, and that

[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand.

Pearson v. Callahan, 555 U.S. 223, 236 (2009).

upper back as he was slammed to the floor.[7]  Defendants contend that Plaintiff cannot show that he

was subjected to the use of excessive force because there was a need for the application of force as

they were attempting to move Plaintiff to a more secure location based on Plaintiff's earlier

disruptive conduct; Plaintiff verbally indicated that he did not intend to comply with their decision

to move him; there was a threat because Plaintiff was at the time in a holding cell with other

detainees and the situation could have erupted into full-scale violence; they needed to use force to

maintain order, discipline, and safety; and the force used was only what was necessary to get

handcuffs on Plaintiff and remove him to an isolated cell.

Excessive force claims of pretrial detainees are governed by the Due Process Clause of the

Fourteenth Amendment.  See Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008); Riley v. Dorton,

115 F.3d 1159, 1166 (4th Cir.1997) (en banc), abrogated on other grounds by Wilkins v. Gaddy, __

U.S. __, ___, 130 S.Ct. 1175, 1178-79 (2010)(per curiam).  In analyzing such a claim, "[t]he proper

inquiry is whether the force applied was in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm."  Taylor v. McDuffie, 155 F.3d

479, 483 (4th Cir.1998)(internal quotation marks omitted), abrogated on other grounds by Wilkins,

---

[7]Plaintiff may also be attempting to allege that Defendant John Doe used a racial expletive against him. See Complaint, p.3.  Verbal abuse of inmates by guards, without more, fails to state a claim under § 1983. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(disrespectful and assaultive comments did not violate Eighth Amendment); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(verbal threats and name calling are usually not actionable under § 1983); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)(sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim); Lamb v. Hutto, 467 F. Supp. 562 (E.D.Va. 1979)(verbal assaults and threats do not state a constitutional claim actionable under § 1983).  Even if the alleged racially derogatory comment was used, such undeniably deplorable and unprofessional behavior does not by itself rise to the level of a constitutional violation. See Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir.1987); Carter v. Morris, 164 F.3d 215, 219 n. 3 (4th Cir. 1999).

130 S.Ct. at 1178-79. This analysis requires consideration of whether the given situation required the use of force and "the relationship between the need and the amount of force used." Orem, 523 F.3d at 446. In answering the question of whether this constitutional line had been crossed, the following factors are relevant: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; and (4) whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm. Id. at 446 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)).

Here, there was a need for the application of force. Wendy Plemmons ("Plemmons"), a detention officer at the YCDC, states that Officer Blauser was handing out mats in the booking area of the YCDC and she was controlling the automatic doors. She states that Plaintiff refused his mat, began raising his voice so all in the booking area could hear, and stated that he was "the biggest, baddest mother f***er in York County." Plemmons states she called for assistance from the Shift Supervisor, Sgt. Keith McClure ("McClure"), to come to Cell I-1 where Plaintiff was causing a scene. She further states she went to Plaintiff's cell and advised him that he was not going to continue to disrespect Officer Blauser by yelling in her face. Plemmons states she ordered Plaintiff to come out of his cell and walk with her and Sgt. McClure to cell I-4, at which time Plaintiff repeated his earlier comment. Plemmons states that as she and McClure started escorting Plaintiff to his new cell he initially started forward, but then suddenly stopped and physically pushed back against her and McClure. Plemmons states they grabbed Plaintiff and turned him to face the booking console so they could handcuff him, but he started forcibly fighting such that McClure used his taser in an attempt to get Plaintiff under control. She states that Plaintiff fell to the floor, but continued

7

to fight back even after being told several times to put his hands behind his back. Plemmons states that the use of the taser was necessary to subdue Plaintiff who is over six feet tall and weighed over 250 pounds (in contrast to Plemmons who was five feet, seven inches tall and weighed 145 pounds). Plemmons Aff. Blauser also states that Plaintiff made the "biggest, baddest" statements; he pushed against McClure and Plemmons; she, Plemmons, and McClure grabbed Plaintiff's arms to handcuff him, but Plaintiff started forcibly fighting; McClure used the taser in an attempt to get Plaintiff under control, Plaintiff fell to the floor, but he continued to fight even after being told several times to put his hands behind his back; she is five feet, five inches tall and weighed approximately 150 pounds; and after Officer Self arrived to assist, all four of the detention officers were able to finally get Plaintiff handcuffed. Blauser Aff. Davies states that he was not on duty the night of the alleged use of force incident. Davies Aff. Plaintiff admits that he told Defendant Jane Doe that he was "not going anywhere unless you talk to me like I'm Somebody." When directed to put his hands behind his head he merely screamed "how can I." Plaintiff's May 5, 2011 Aff. (Ex. 1 to Defendants' Motion for Summary Judgment and Attachment to Plaintiff's Opp. Mem.).

The relationship between the need and the use of force was proportionate. As noted above, Plaintiff refused direct orders and continued to fight even after being taken down. The detention officers appear to have used a small amount of force to begin with, but had to escalate their use of force because Plaintiff refused to comply and actively resisted. McClure states that when he got to Plaintiff's cell, Plaintiff was cursing Plemmons; Plaintiff stopped moving to the new cell and McClure and Plemmons took Plaintiff by his arms in an escort hold; Plaintiff grabbed McClure by the shirt and belt and quickly became combative; Plaintiff is a very large, strong man; McClure delivered a five second pulse of his taser which caused Plaintiff to fall to the booking console and

then onto the floor; McClure ordered Plaintiff to place his hands behind his back to be handcuffed, but Plaintiff refused, began to struggle, and resisted the officers who were trying to put his arms behind his back; McClure delivered another five second pulse with the taser, but Plaintiff continued to resist; McClure fired the dart cartridge and delivered a "drive stun" to the back of Plaintiff's shoulder blade/upper back area; Plaintiff continued to struggle and tried to take the taser from McClure; McClure kept ordering Plaintiff to put his hands behind his back, and Plaintiff finally stopped struggling and the detention officers were able to cuff him and place him in Cell I-4A. McClure Aff.

Plaintiff also fails to show anything more than de minimis injury. The Statement of Force report indicates that Plaintiff had only a minor burn mark from the taser. It further provides that Plaintiff "Refused Medical (1ˢᵗ Aid) Treatment." See McClure Aff., Ex. 4-b (Statement of Force). A synopsis of Plaintiff's medical record from Just Care indicates that Plaintiff was admitted there on September 4, 2008 because of his behavior at the YCDC and that Plaintiff was described as aggressive, combative, and psychotic by the YCDC. See Attachment to Plaintiff's Opp. Mem., Ex. 7-A to Defendants' Motion for Summary Judgment. There is nothing in this notation that indicates any injuries as a result of the alleged use of force incident. Plaintiff has presented no medical records or other evidence to support his claims of injuries.

Finally, Defendants have presented evidence that the force used was applied in a good faith effort to maintain and restore discipline rather than used maliciously and sadistically for the purpose of causing harm. As discussed above, Defendants have provided affidavits indicating they used force in order to prevent Plaintiff's disruptive conduct from escalating and affecting the safety of those at the YCDC.

b.        Conditions of Confinement

Plaintiff appears to allege that he was subjected to unconstitutional conditions of confinement because he was housed in a "medical cell" at the YCDC for three months without recreation or "outside contact." He may also be attempting to assert a claim concerning his treatment during the few days he spent at the YCDC between his admittance on August 30, 2008, and his placement at Just Care. Defendants argue that Plaintiff has made no showing that they were in any way responsible for his placement in the medical cell. They also argue that he has not shown that he was denied any basic human needs or that his alleged conditions of confinement caused him physical or mental injury. Additionally, Defendants argue that none of the alleged conditions constituted punishment.

Allegations of deprivations of pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions...the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

(citations omitted). However, the due process rights of detainees are at least coextensive with Eighth Amendment rights of convicted prisoners, and perhaps greater. Whisenant v. Yuam, 739 F.2d 160 (4th Cir. 1984); Loe v. Armistead, 582 F.2d 1291, 1292 (4th Cir. 1978), cert. denied, Moffit v. Loe, 446 U.S. 928 (1980).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Thus, it must be determined whether the conditions and/or treatment received by plaintiff amounted to punishment. Absent a showing of expressed intent to punish on the part of correctional officials, the determination whether a particular condition or restriction is punishment generally turns on whether it is rationally connected to a legitimate non-punitive purpose and whether it is excessive in relation to that purpose. Bell, 441 U.S. at 538.

As to Plaintiff's complaints about being housed in a medical cell for three months, he has asserted no facts to show that the Defendants named here were responsible for his placement there. Plaintiff was moved to a separate holding cell after the alleged use of force incident because he posed a threat to the safety of other detainees as well as the YCDC staff. The alleged placement of Plaintiff in a special medical cell was after he was returned from a period of evaluation and treatment of numerous psychiatric conditions, such that the placement appears to be pursuant to a legitimate, non-punitive purpose which was not excessive in relation to its purpose. See Hause v. Vaught, 993 F.2d 1079 (4th Cir. 1993)(detention center's policy of placing all incoming detainees in administrative segregation for five days before releasing them to the general prison population did not violate the plaintiff's constitutional rights), cert. denied, 510 U.S. 1049 (1994); see also Zarnes v. Rhodes, 64 F.3d 285, 290 (7th Cir. 1995)(segregation of detainee for her protection and that of other inmates was not punishment for purposes of § 1983 claim); Mitran v. County of Dupage, 946 F.2d 897, 1991 WL 209656 (7th Cir. 1991)[Table](no due process violation where detainee with leg injury held in administrative segregation to protect him from harm); Watts v. Foster, 838 F.2d 469, 1988 WL 4588 (4th Cir. 1988)[Table](confinement of pretrial detainee in administrative segregation

11

for nine months not "punishment' where it was reasonably related to the legitimate governmental objective of preventing his escape). Additionally, Plaintiff has shown nothing more than de minimis (if even that) injuries as a result of his alleged conditions of confinement either after the alleged use of force incident or when he was allegedly was placed in a medical cell. A de minimis injury does not violate the Fourteenth Amendment. See Ingraham, 430 U.S. at 674 ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned.")

             c.      Conspiracy

Plaintiff claims that there was a "cover up." He appears to be alleging that Defendant Davies conspired to cover up that Plaintiff was at the YCDC in order to "harm [Plaintiff] whenever possible." Complaint, pp. 2 and 7. Davies states that in late July or early August 2010, the Sheriff's Office got a letter from Plaintiff asking for information concerning personnel on duty the night of Plaintiff's arrest (August 30, 2008). Davies states he looked at the computer records of the YCDC and found a 2009 booking for Plaintiff corresponding to the time Plaintiff was returned from mental health treatment at Just Care in April 2009. As Plaintiff's request was for August 2008, Davies wrote a letter to Plaintiff advising him that the records did not reflect he had been in custody during the time in question. Davies states that he was mistaken as he did not search for other records after finding the 2009 booking. He admits that Plaintiff actually was at the YCDC during 2008. Davies Aff.

To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). A plaintiff must come forward with specific evidence that each member of the

12

alleged conspiracy shared the same conspiratorial objective. Id. To survive a summary judgment motion, a plaintiff's evidence must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." Id. A plaintiff's allegation must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. Id. at 422. The plaintiff must show that the defendants possessed an intent to commit an unlawful objective. Id.

Here, Plaintiff has presented nothing other than his own speculation that there was a conspiracy. He fails to show a meeting of the minds amongst Defendants to deprive him of his constitutional rights. Further, he fails to show an underlying constitutional deprivation as discussed above. Even if he can show that Defendant Davies was negligent in not providing the correct information, negligence does not rise to the level of a constitutional violation. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 238-36 & n. 3 (1986); Ruefly v. Landon, 825 F.2d 792, 798-94 (4th Cir. 1987); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995).

2.      Eleventh Amendment Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police,

13

491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh

Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil
> liberties, but it does not provide a federal forum for litigants who seek a
> remedy against a State for alleged deprivations of civil liberties. The
> Eleventh Amendment bars such suits unless the State has waived its immunity
> [cites omitted] or unless Congress has exercised its undoubted power under
> § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or

governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but

the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh

Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state

officials acting in their official capacities is actually against the office itself and, therefore, against

the state. State officials may only be sued in their individual capacities.

In Gulledge v. Smart, 691 F. Supp. 947 (D.S.C. 1988), aff'd mem., 878 F.2d 379 (4th Cir.

1989)[Table], the court addressed whether South Carolina sheriffs were state or county officials. The

court applied South Carolina common law principles of the master and servant relationship and

concluded that sheriffs are state officials. Id. at 954-955. The Fourth Circuit concluded, in Cromer

v. Brown, 88 F.3d 1315 (4th Cir. 1996), that the Greenville County sheriff, in his capacity as a state

official, was immune from suit for monetary damages under § 1983. Id. at 1332. Further, in

Gulledge, the district court concluded that deputy sheriffs are agents of the sheriff and therefore

under state, not county, control. Gulledge, 691 F. Supp. 955; see also Heath v. Aiken County, 368

S.E.2d 904 (S.C. 1988). In Cone v. Nettles, 417 S.E.2d 523 (S.C. 1992), the Supreme Court of South

Carolina cited Gulledge with approval and specifically held that South Carolina sheriffs and their

14

deputies are state officials for § 1983 purposes.  Defendants provide that they are employed by the Sheriff of York County.  Thus, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

      3.      <u>State Law Claims</u>

Plaintiff appears to assert a claim for assault and battery under South Carolina law. Defendants contend that this claim is barred by the applicable statute of limitations.[8]  As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

**<u>CONCLUSION</u>**

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 35) be **granted**.


                                                Joseph R. McCrorey
                                               United States Magistrate Judge

February 17,  2012
Columbia, South Carolina


**The parties are referred to the Notice Page attached hereto.**

---

[8]Claims brought pursuant to the SCTCA are barred "unless commenced within two years after the date of the loss was or should have been discovered [.]" S.C.Code Ann. § 15–78–110.  Plaintiff did not file this action until September 29, 2010, but his complaint is dated August 30, 2010.  <u>See</u> Doc. 1.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).