IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Jerome Anderson, ) | C/A NO. 3:10-2481-CMC-JRM |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION and ORDER** |
| v. ) | |
| ) | |
| Lt. Gary L. Davies; Sgt. "Jane Doe"; ) | |
| Cpl/Ofc. "John Doe"; and Sheriff Bruce ) | |
| Bryant, ) | |
| ) | |
| Defendants. ) | |
| ———————————————— ) | |

This matter is before the court on Plaintiff's *pro se* complaint, filed in this court pursuant to

42 U.S.C. § 1983.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(d), DSC, this

matter was referred to United States Magistrate Judge Joseph R. McCrorey for pre-trial proceedings

and a Report and Recommendation ("Report"). On February 17, 2012, the Magistrate Judge issued

a Report recommending that Defendants' motion for summary judgment be granted and this matter

be dismissed with prejudice. The Magistrate Judge advised Plaintiff of the procedures and

requirements for filing objections to the Report and the serious consequences if he failed to do so.

The time for filing objections expired, and this court issued an Order directing Plaintiff to submit

objections, if he so wished, by Wednesday, March 14, 2012.[1]  Plaintiff was warned that failure to

comply with the Order would result in this case being dismissed with prejudice for failure to

prosecute.

---

[1]Plaintiff has been released from the South Carolina Department of Corrections (SCDC) and
provided the Clerk of Court his new address.  ECF No. 51.  The Report was mailed to that address
and was not returned.

1

On March 14, 2012, this court received a letter from "Linda Davis," indicating that Plaintiff was currently incarcerated in the York County Detention Center (YCDC), that he wished to continue to pursue this action, and that he needed additional time to file objections. ECF No. 56. The Clerk of Court telephoned Davis and informed her that Plaintiff was responsible for contacting the court to provide a change of address (a responsibility of which he has been specifically advised via written order) and for seeking any additional time he might require for submission of objections. Davis indicated that she would relay the information to Plaintiff.

On March 19, 2012, Plaintiff mailed a letter indicating that he was currently incarcerated in the YCDC and that he wished this court to "reconsider" the Report's recommendation that Defendants be granted summary judgment. Letter at 1 (ECF No. 59, filed Mar. 20, 2012). The court considers Plaintiff's letter an objection to the Report.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The court reviews the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citation omitted).

For the reasons discussed below, except for "John Doe," all Defendants are dismissed from

this action with prejudice. The complaint shall be amended to correctly identify A. Keith McClure

as "John Doe," and this matter will, after certain procedural matters are addressed, proceed to trial

during the term of court beginning June 29, 2012.

## II. DEFENDANTS TO BE DISMISSED

### A. SHERIFF BRUCE BRYANT

Neither Defendants' motion nor the Report specifically address Plaintiff's claims against

Defendant Sheriff Bruce Bryant in his individual capacity.[2] It is well-settled that Plaintiff must

include allegations against a specific individual to properly allege § 1983 liability, and it must be

affirmatively shown that the official charged acted personally in the deprivation of Plaintiff's rights.

*Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Plaintiff makes no contention that Defendant

Bryant participated in the incident on August 30, 2008.

Neither does Plaintiff allege a claim against Bryant based on supervisory liability. It is well

settled that "supervisory officials may be held liable in certain circumstances for the constitutional

injuries inflicted by their subordinates." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001)

(quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). Such liability is not based on ordinary

principles of respondeat superior, but rather is premised on "a recognition that supervisory

indifference or tacit authorization of subordinates' misconduct may be a causative factor in the

constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368,

372 (4th Cir. 1984). In order to establish supervisory liability under § 1983, a plaintiff must

demonstrate:

---

[2]Plaintiff filed a motion to amend the complaint on July 7, 2011. The motion indicates, in part, that Plaintiff wished to dismiss Sheriff Bryant from the complaint. However, the motion was denied by the Magistrate Judge. Therefore, the court addresses this Defendant as if he is still a party to the case.

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

*Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002). "A pervasive risk of harm (under this principle) may not ordinarily be shown by pointing to a single incident or isolated incidents," *Withers v. Levine*, 615 F.2d 158, 161 (4th Cir. 1980), nor is a "(s)howing that individual officers violated a person's constitutional rights on an isolated occasion . . . sufficient to raise an issue of fact whether adequate training and procedures were provided." *McClelland v. Facteau*, 610 F.2d 693, 697 (10th Cir. 1979).

Because Plaintiff has failed to state a claim against Sheriff Bryant in his individual capacity, and Sheriff Bryant is entitled to Eleventh Amendment immunity on any official capacity claim, all claims against Sheriff Bryant are dismissed with prejudice.

## B. LT. GARY DAVIES

For the reasons stated in the Report, which the court adopts as its findings relating to Defendant Davies, Davies is entitled to summary judgment and all claims against Davies are dismissed with prejudice.

### III. SUMMARY JUDGMENT

#### A. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine dispute, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The essence of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the non-moving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. Fed. R. Civ. P. 56(c). In response to the motion, the nonmoving party must then either cite to particular parts of materials in the record or show that the materials cited "do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(B); *see also generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine [dispute] through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

In deciding a summary judgment motion, the court must look beyond the pleadings and

5

determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986). If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. An issue of fact concerns "material" facts only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

In this Circuit, verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. *See* ECF No. 1.

**B. FACTS**

In the light most favorable to Plaintiff, the facts are as follows. On August 30, 2008, Plaintiff was arrested for armed robbery and booked into the York County Detention Center (YCDC). Defendant was placed in a "holding" cell with several other individuals. Defendants contend that Plaintiff became disruptive, which Plaintiff does not specifically deny. Plaintiff maintains that corrections officers,

led by Sgt. "Jane Doe,". . . came to my holding cell and ordered me out. I asked why. They said it was not my business. "They" being Sgt Jane Doe. *As soon as I stepped out of the holding cell* Cpl "John Doe" attacked me from behind with a hand-held tazor [sic]. The pain was unbearable. I fell to the floor being punched and kicked in my sides and back, while on the floor with Cpl John Doe holding the tazor [sic] to my head, he screamed, "Put your hands behind your head nigger!" Me, wanting the terrible pain to stop, managed to scream back, "How can I!" After what seemed to be an eternity, they stopped punching me and Cpl John Doe ceased with the tazor [sic].

Compl. at 3-4 (ECF No. 1, filed Sept. 29, 2010) (emphasis added). He also contends that "Cpl 'John Doe' or one of the others, planted his knee into my upper back as they slammed me to the floor. I haven't been the same since." *Id*. at 7.

Plaintiff maintains that the taser incident was so severe that he was, after several days, committed to the "Just Care" psychiatric facility in Columbia, South Carolina, where he remained for eight (8) weeks. *Id*. at 4.

Plaintiff forwarded an affidavit, dated May 5, 2011, to Defendants' counsel, which was subsequently filed as an attachment to Defendants' motion for summary judgment. In Plaintiff's affidavit, he avers that the officers

grouped up outside the cell looking in at me. So I asked Sgt 'Jane Doe,' through the plexiglass, 'What are y'all planning on doing?" She then responded . . . 'We're moving you!" . . . I then yelled, "I'm not going anywhere unless you talk to me like I'm somebody!" She then tempered her directive and smiled at me. The cell door slid open and I said, 'That's more like it." *And as soon as I walked through the cell door* officer 'John Doe' applied the stun gun - *immediately* - to the back of my head and neck area.

Pla's Aff. at 1-2 (ECF No. 35-4 & 45-1 at 4-8) (emphasis added).

Defendants answered, and subsequently moved for summary judgment. In support of summary judgment, affidavits of several YCDC officers were submitted, including an affidavit of Detention Center Officer A. Keith McClure (McClure). McClure was present during the incident and, per his averment, is the individual who operated the taser gun. McClure attests that Plaintiff created a disturbance and officers decided to move Plaintiff to another cell. McClure avers that

7

[w]e were moving inmate Anderson [to] a cell by himself to avoid the possibility of his inciting other inmates . . . . Anderson finally started walking towards his new cell assignment, but after a few steps he stopped and got face-to-face with me . . . . He quickly became combative. . . . I was able to retrieve my taser while holding on to [sic] one of inmate Anderson's arms and discharged it into his upper right chest shoulder area. I delivered a 5 second pulse which caused him to fall into the console and then on to [sic] the floor.

Aff. of A. Keith McClure (hereinafter "McClure Aff.") at ¶¶ 4-8 (ECF No. 35-9, filed June 15, 2011). McClure attests that as they struggled, he ordered Plaintiff to place his hands behind his back to be handcuffed, but that Plaintiff refused and "began to struggle [again] and resist the officers who were trying to put his arms behind his back. He was again becoming combative so I delivered another 5 second pulse with the taser." *Id*. at ¶ 9. McClure avers that Plaintiff continued to resist and that he (McClure) "fired the dart cartridge and delivered a 'stun drive' to the back of his shoulder blade/upper back area." *Id*. at ¶ 10. McClure attests that even after he delivered the "stun drive," Plaintiff continued to struggle, but that Plaintiff eventually ceased, and officers were able to handcuff Plaintiff and place him in a cell.

Plaintiff's response to Defendants' summary judgment motion was filed July 7, 2011. Plaintiff contends he was "attack[ed]" by "Officer 'John Doe' Blouser [sic] . . . ." Resp. to Summ. J. at 2 (ECF No. 45). Plaintiff "almost 100% dispute[s] what each defendant claims in his . . . [affidavit]." *Id*. Plaintiff contends that "in my affidavit, I swear that it is ["Officer 'John Doe' Blouser [sic]] that grabs me from behind and tasors [sic] me in the back of the head and neck area, taking me down to the floor." *Id*. at 3. "But none of the defense's affidavits address my assertion and Officer Blouser [sic] did not submit . . . an affidavit (under oath)." *Id*. at 3-4. "Sgt McClure claims that it was in fact he who used the tasor [sic] on me, in his affidavit . . . ." *Id*. at 4. "Not only is Sgt McClure lying about who used the stun gun, but also on which anatomical part of my body that it was used." *Id*.

Plaintiff maintains that Defendants' motion for summary judgment

names Officer Blouser [sic] as a primary participant in this incident[ ] along with Officers McClure, Plemmons, and Self. They in turn mention him in thier [sic] affidavits in varying roles during my handcuffing particularly, and I point out specifically that a Corporal or Officer 'John Doe' attacked me from behind and tasored [sic] me in the head and neck area . . . .

*Id*. at 5. Later, Plaintiff argues that

Sgt McClure is in contempt of court for lying about [him] being the officer who tasored [sic] me and where anatomically I was stunned. And the defense had hid[den] the testimony of Officer 'John Doe' Blouser [sic] who I have now, upon disclosure, positively identified as the officer who tasored [sic] me to the back of my head and neck area . . . .

9. Plaintiff attaches a copy of the affidavit he sent to defense counsel, executed May 5, 2011, to his Response in opposition to Defendants' motion.

In response to Plaintiff's assertions about the actions of "Officer 'John Doe' Blouser," Defendants submitted the affidavit of Detention Officer Crystal L. Blauser, who was on duty on the night in question and was handing out "mats" to inmates in the booking area at YCDC. Blauser avers that Anderson "refused his mat and began raising his voice so that all in the booking area could hear, yelling 'I am the biggest, baddest motherfucker in York County.'" Aff. of Crystal L. Blauser at ¶ 3 (ECF No. 46, filed July 13, 2011). Blauser attests that "[a]t the time of this occurrence with inmate Anderson, and currently, I have never been issued or used a taser. Sgt. McClure was the only officer who used a taser in the August, 30, 2008 incident with inmate Anderson." *Id*. at ¶ 10.

Plaintiff filed no response to this affidavit. In his March 19, 2012, letter to the court, Plaintiff appears to concede that Blauser was not the individual who used a taser gun on him, inquiring, "Where is Sgt [ ] McClure? He tazored [sic] me in the head and now he's nowhere to be found and tasor [sic] are everywhere." Letter at 1.

Neither McClure nor Blauser has been named or served as a Defendant in this action.[3] Additionally, neither "Jane Doe" nor "John Doe" moved to dismiss this action under Federal Rule of Civil Procedure 12(b)(2), nor did they include this defense in their answer.

## C. SGT. "JANE DOE"

The evidence is clear that one of the female officers involved in the incident on August 30, 2008, was Crystal Blauser. The evidence is also undisputed that Plaintiff contends that a male officer, "Cpl/Ofc. John Doe" used the taser gun on him.

John Doe suits are permissible only against "real, but unidentified, defendants." *Schiff v. Kennedy*, 691 F.2d 196, 197 (4th Cir. 1982). The designation of a John Doe defendant is generally not favored in the federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery. *See Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir.1996); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980). However, once filed, it is incumbent upon a plaintiff to amend his pleadings to correctly identify the specific individuals involved so that the matter may proceed to judgment. As noted long ago by the Fourth Circuit:

> A district court is not required to act as an advocate for a pro se litigant; but when such a litigant has alleged a cause of action which may be meritorious against a

---

[3]On July 7, 2010, by separate motion, Plaintiff moved to amend his complaint. He indicated that he wished to add Defendants Sgt. A. Keith McClure, "Ofc" Richard Self, and "Sgt/Cpl" Wendy L. Plemmons. Mot. at 1, 2 (ECF No. 40, filed July 7, 2010). Plaintiff did not submit a proposed amended complaint. Defendants opposed Plaintiff's motion. ECF No. 47 (filed July 15, 2011). On October 4, 2011, the Magistrate Judge denied Plaintiff's motion to amend. ECF No. 49. The Magistrate Judge noted that Plaintiff had filed his motion more than twenty-one days after Defendants had answered, and that Defendants opposed the amendment. Additionally, the Magistrate Judge found that Plaintiff had not provided a proposed amended complaint to the court for evaluation of what claims Plaintiff would be asserting against the proposed new Defendants. Plaintiff did not move for reconsideration of the denial, nor did he appeal the Magistrate Judge's ruling to the undersigned. *See* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

person or persons unknown, the district court should afford him a reasonable opportunity to determine the correct person or persons against whom the claim is asserted, advise him how to proceed and direct or permit amendment of the pleadings to bring that person or persons before the court.

*Gordon v. Leeke*,  574 F.2d 1147, 1152-53 (4th Cir. 1978).

Common sense dictates that Blauser is not "<u>John</u> Doe." Additionally, Blauser avers that she was not issued a taser gun, and Plaintiff has not disputed this fact.  The affidavit confirms the fact that Plaintiff originally incorrectly identified the party allegedly responsible for the taser use as "Blouser."  Plaintiff's only viable claim is that use of the taser on him constitutes excessive force. It is clear from Plaintiff's letter objection that he now agrees that Officer McClure is the individual who tased him.   Accordingly, Plaintiff's claims against Sgt. "<u>Jane</u> Doe" are dismissed from this action with prejudice.

### D.  CPL/OFC "JOHN DOE"

The Report recommends granting summary judgment on Plaintiff's excessive force claim because (the Report concludes) "there was a need for the application of force[,]" and "[t]he relationship between the need and the use of force was proportionate."  Report at 8.  Additionally, the Report concludes that "Defendants have presented evidence that the force used was applied in a good faith effort to maintain and restore discipline rather than used maliciously and sadistically for the purpose of causing harm."  *Id*. at 9.  Plaintiff objects to the Report asking the court to "reconsider" the Report's recommendation.  ECF No. 59.

The Report makes an impermissible credibility determination of the evidence in the record against the non-moving party. "The law . . . is clear that [a court is] to view the evidence in a light most favorable to the nonmoving party and to give him the benefit of all reasonable inferences." *Odom v. South Carolina Dep't of Corr.*, 349 F.3d 765, 774 (4th Cir. 2003).  The non-moving party "is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in

11

dispute accepted, [and] all internal conflicts in it resolved favorably to him.'" *Miller v. Leathers*, 913

F.2d 1085, 1087 (4th Cir. 1990) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th

Cir.1979)). *See also Bacchus v. Scarborough*, __ F. App'x __, 2012 WL 506561 (4th Cir. Feb. 16,

2012) (remanding case to district court for further proceedings because district court "erred by

resolving the differing descriptions of the role played by [the moving party] in [the moving party's]

favor.").

The Report fails to give any credence to Plaintiff's averment that "John Doe" allegedly used

the taser gun on him while he was complying with officers' directives and without any warning as

soon as he walked out of the cell. The Magistrate Judge recounts the facts as presented by

Defendants as though those versions of events are the only version presented, which they are not.

For example, the Magistrate Judge finds that

> [Sgt. Wendy] Plemmons states she ordered Plaintiff to come out of his cell and walk
> with her and Sgt. McClure to cell I-4, at which time Plaintiff repeated his earlier
> comment. Plemmons states that as she and McClure started escorting Plaintiff to his
> new cell he initially started forward, but then suddenly stopped and physically
> pushed back against her and McClure. Plemmons states they grabbed Plaintiff and
> turned him to face the booking console so they could handcuff him, but he started
> forcibly fighting such that McClure used his taser in an attempt to get Plaintiff under
> control.

Report at 7. Moreover, the Report summarizes McClure's affidavit, indicating that

> when he got to Plaintiff's cell, Plaintiff was cursing Plemmons; Plaintiff stopped
> moving to the new cell and McClure and Plemmons took Plaintiff by his arms in an
> escort hold; Plaintiff grabbed McClure by the shirt and belt and quickly became
> combative; Plaintiff is a very large, strong man; McClure delivered a five second
> pulse of his taser which caused Plaintiff to fall to the booking console and then onto
> the floor; McClure ordered Plaintiff to place his hands behind his back to be
> handcuffed, but Plaintiff refused, began to struggle, and resisted the officers who
> were trying to put his arms behind his back; McClure delivered another five second
> pulse with the taser, but Plaintiff continued to resist; McClure fired the dart cartridge
> and delivered a "drive stun" to the back of Plaintiff's shoulder blade/upper back area;
> Plaintiff continued to struggle and tried to take the taser from McClure; McClure
> kept ordering Plaintiff to put his hands behind his back, and Plaintiff finally stopped
> struggling and the detention officers were able to cuff him and place him in Cell
> I-4A.

Report at 8.

Plaintiff's verified statements and affidavit, which must be taken as true at this stage, are that

McClure and others

> grouped up outside the cell looking in at me. So I asked Sgt 'Jane Doe,' through the plexiglass, 'What are y'all planning on doing?" She then responded . . . 'We're moving you!" . . . I then yelled, "I'm not going anywhere unless you talk to me like I'm somebody!" She then tempered her directive and smiled at me. The cell door slid open and I said, 'That's more like it." *And as soon as I walked through the cell door* officer 'John Doe' applied the stun gun - *immediately* - to the back of my head and neck area.

Pla's Aff. at 1-2 (ECF No. 35-4 & 45-1 at 4-8) (emphasis added). The verified complaint also

contends that Plaintiff

> fell to the floor being punched and kicked in my sides and back, while on the floor with Cpl John Doe holding the tazor [sic] to my head, he screamed, "Put your hands behind your head nigger!" Me, wanting the terrible pain to stop, managed to scream back, "How can I!" After what seemed to be an eternity, they stopped punching me and Cpl John Doe ceased with the tazor [sic].

Compl. at 3-4 (ECF No. 1, filed Sept. 29, 2010) (emphasis added).

When the opposing versions are examined, it is clear that there is a genuine dispute as to the

following material facts: 1) Did Plaintiff comply with officers' directives to come out of his cell and

walk with them to another cell? 2) Did Plaintiff suddenly stop and push back against officers

Plemmons and McClure? 3) Did Plaintiff start "forcibly fighting" with McClure? 4) Did Plaintiff

resist, continue to struggle, and refuse to be handcuffed after being tasered so as to require a "stun

drive" to subdue him?; or 5) Did Plaintiff walk through his cell door and immediately get tasered

to the back of his head and neck area, and then punched and kicked in his sides and back while on

the floor?

These issues must be resolved by the factfinder. Accordingly, the Report's recommendation

of summary judgment on this claim is rejected.[4]

### E. QUALIFIED IMMUNITY

Defendant "John Doe" asserts that he is entitled to qualified immunity. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. Thus, determining whether an official is entitled to qualified immunity requires that the court make a two-step inquiry "in proper sequence." *Parrish v. Cleveland*, 372 F.3d 294, 301-02 (4th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). As a threshold matter, the court must determine whether, taken in the light most favorable to Plaintiff, the facts alleged show that the conduct of Defendant "John Doe" violated a constitutional right. *Id*. If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and Plaintiff cannot prevail. *Id*. If the facts do establish such a violation, however, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. *Id*. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Id*. "If the right was not clearly established in the 'specific context of the case'–that is, if it was not 'clear to a reasonable officer' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted'–then the law affords immunity from suit." *Id*. (quoting *Saucier*, 533 U.S.

---

[4]The Report also addresses a state law claim for assault and battery, indicating that the court should decline to exercise supplemental jurisdiction and dismiss the purported claim under 28 U.S.C. § 1367(c)(3). However, throughout Plaintiff's complaint, and in his response to Defendants' motion for summary judgment, Plaintiff only refers to alleged constitutional claims arising in this court under 42 U.S.C. § 1983. Therefore, to the extent the Report makes any recommendation regarding state law claims, the court finds that no state law claims have properly been asserted or preserved, and also declines to adopt this portion of the Report.

at 201).

The qualified immunity inquiry thus becomes whether an officer in the "specific context" would know that using a taser gun on an individual in custody, when that individual was compliant with officers' directives, was "clearly established" as an excessive use of force under the Fourteenth Amendment. If the material facts were undisputed, this court would apply clearly established law to determine whether Defendant "John Doe" is entitled to qualified immunity. However, "while the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (quoting *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).

Viewed in the light most favorable to the non-moving party, here Plaintiff, the facts are sufficient to support a finding that Defendant "John Doe" used force in a quantity greater than necessary and did so for the purpose of causing pain. Such conduct would violate a clearly established constitutional right to be free from an excessive use of force.

Defendant "John Doe" is not entitled to summary judgment on the issue of qualified immunity because he had "'fair warning' that [his] conduct was unconstitutional," *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006). Therefore, this court denies the motion for summary judgment on grounds of qualified immunity filed on behalf of Defendant "John Doe."

### IV. JOHN DOE – AMENDMENT TO CORRECTLY IDENTIFY

The record as it currently exists leaves "John Doe" as the only defendant for trial. However, it is axiomatic that a determination of liability cannot be imputed to a "John Doe." It appears that both sides now agree that "John Doe" is McClure; however, he has not been properly joined as a

Defendant in this action.

As noted above, John Doe suits are permissible only against "real, but unidentified, defendants." *Schiff v. Kennedy*, 691 F.2d 196, 197 (4th Cir. 1982). McClure appears to have received notice of this action within the statute of limitations period, as evidenced by his execution of an affidavit on June 6, 2011, describing his role in the events of August 30, 2008.[5] McClure's affidavit, reciting his version of the events that evening, evidences a recognition that suit might be brought against him, as he attests "I used the taser to gain control of inmate Anderson and to avoid the possibility of physical injuries to Corporal Plemmons, Detention Officers Blauser, Self, and me. Inmate Anderson was quite a bit stronger than any of us and posed what I considered a physical threat to our safety." Aff. of McClure at ¶ 15. Plaintiff appears to concede that McClure is "John Doe," as evidenced by his letter filed March 19, 2012 ("Where is Sgt [ ] McClure? He tazored [sic] me in the head and now he's nowhere to be found . . . .").

Therefore, it appears Plaintiff may be able to meet the requirements of Rule 15(c) for amendment of his complaint, as McClure received notice of this action within the statute of limitations period and "knew or should have known that the action would have been brought against [him] but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). *See also Eakins v. Reed*, 710 F.2d 184 (4th Cir. 1983) (allowing amendment of complaint to correctly identify defendant even though statute of limitations had expired).

Counsel for Defendant shall notify the court by **Monday, April 9, 2012**, whether McClure will consent to waiver of service of process under Federal Rule of Civil Procedure 4(d) or, if not,

---

[5]In South Carolina, the general or residual statute of limitations for personal injury claims is codified at S.C. Code Ann. § 15-3-530(5) and provides a three year limitations period. This is the applicable statute of limitations for a § 1983 action. *See*, *e.g.*, *Huffman v. Tuten*, 446 F. Supp. 2d 455 (D.S.C. 2006). Therefore, the statute limitations would have expired on August 30, 2011.

whether counsel is authorized to accept service on behalf of McClure. If McClure will not waive service of process, the Clerk shall provide a blank summons form and a United States Marshal Form 285 to Plaintiff for him to fill in and return to the court. If amended process must issue, Plaintiff shall return this material to the Clerk by **Friday, April 20, 2012**. The Clerk shall thereafter, if necessary, forthwith issue the amended summons and provide the necessary copies of the complaint, a copy of the Report and Recommendation, and this Opinion and Order, to the United States Marshal for service on McClure.

Absent notice to the court to the contrary, Defendant McClure shall be deemed to adopt the answer and any motions previously filed on behalf of "John Doe."

For purposes of any additional proceedings in this matter, the court withdraws the reference contemplated by Local Rule 73.02.

## V. CONCLUSION

Defendants Davies and Bryant are granted summary judgment and are dismissed from this action with prejudice. Additionally, the court finds that for the reasons stated by the Magistrate Judge regarding Plaintiff's claims of conspiracy and conditions of confinement, which the court adopts and incorporates by reference, all Defendants are entitled to summary judgment on those claims. Defendant "Jane Doe" is dismissed from this action with prejudice. Summary judgment is denied as to Defendant "John Doe" on the excessive force claim.

The complaint in this matter is deemed amended to correctly identify "John Doe" and substitute Defendant A. Keith McClure for "John Doe." This matter shall be set for jury trial on the issue of whether or not McClure's use of the taser gun on Plaintiff on August 30, 2008, was a constitutionally permissible use of force.

This matter is set for a pretrial conference on **Thursday, May 31, 2012 at 2:00 p.m.,** in Courtroom Number 2, Matthew J. Perry, Jr., United States Courthouse, 901 Richland Street, Columbia, South Carolina 29201. This matter is set for jury selection and trial to begin during the

17

term of court beginning June 29, 2012.

The court is aware that Plaintiff is currently detained in the YCDC, yet is without knowledge as to Plaintiff's current ability to appear and prosecute this action. The undersigned specifically advises Plaintiff that failure to keep the court informed, in writing, of any change of address will result in the dismissal of this action with prejudice for failure to prosecute.[6]

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 28, 2012

---

[6]The court is aware that if Plaintiff is still incarcerated as of the date set for pretrial conference, a videoconference may be warranted. Plaintiff should notify the court by **Tuesday, May 15, 2012**, whether he anticipates still being incarcerated on the date set for a pretrial conference and whether the York County Detention Center has videoconferencing capabilities.